William MARCO, as Administrator, etc. of Harry Marco, Deceased, a stockholder of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., on behalf of himself and all other stockholders similarly situated, and on behalf of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc. and Ridge Realization Corporation, as assignee of Blue Ridge Corporation, Plaintiff-Appellant,

v.

The BANK OF NEW YORK and Arthur H. Dean, as the Executors of the Estate of John Foster Dulles, Deceased, Sidney J. Weinberg, Waddill Catchings and Walter E. Sachs, Defendants-Appellees,

Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., and Ridge Realization Corporation, Defendants-Appellants.

No. 408, Docket 31860.

United States Court of Appeals Second Circuit.

Argued April 10, 1968.

Decided June 26, 1968.

Leo C. Fennelly, New York City (David M. Palley, New York City, on the brief), for plaintiff-appellant William Marco, as Administrator, etc., et al.

David W. Peck, New York City (Sullivan & Cromwell, New York City, on the brief), for defendants-appellees.

Fennelly, Douglas, Eagan, Nager & Voorhees, New York City, on the brief for defendants-appellants Blue Ridge Corporation and Ridge Realization Corporation.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

LUMBARD, Chief Judge:

Our determination of this appeal turns on whether there is support in the record for Judge Herlands' dismissal, on the merits, in 1967, of the complaint in this stockholder's derivative action brought by William Marco against four former directors of Blue Ridge Corporation for their part in transactions which took place in 1930, 1931 and 1932. We affirm the judgment dismissing the complaint on the merits as there is ample support for the findings and conclusions of the district court.

The alleged dereliction of the Blue Ridge directors concerned transactions in the stock of Conde Nast Publications, Inc., which had been a profitable publishing firm with a modern printing plant issuing such magazines as Vogue, House & Garden and Vanity Fair. It was controlled and directed by Conde Nast.

Blue Ridge was an investment trust with a portfolio in October 1930 worth over $100,000,000, and its six directors were John Foster Dulles, Waddill Catchings, Sidney J. Weinberg, Walter E. Sachs, Harrison Williams, and Clifford F. Stone. In October 1930, when Conde Nast Publications common stock was selling at $36 on the New York Stock Exchange, approximately 8½ times estimated 1930 earnings, and yielding over 5% on the price of the stock, the Blue Ridge directors decided to acquire an investment interest in Conde Nast Publications. This was done by an arrangement which gave Blue Ridge certain stock options upon its agreement to buy a certain number of Conde Nast Publications shares in the market, and an agreement, dated October 24, 1930, whereby Blue Ridge agreed to purchase 160,000 shares of Conde Nast Publications at $25 per share, which shares were held by the Chase National Bank as collateral on a $4,000,000 loan to a Nast controlled company on a note maturing December 31, 1931, if the note was not paid. If the note was paid, Blue Ridge was to receive 10,000 shares and an option on 40,000 shares at $35 per share.

Upon the testimony of Weinberg, Sachs and Stone, directors during the times in question, who still survived 36 years after these events, and who impressed the trial judge as "credible and trustworthy," upon the depositions of Williams who had died and of Catchings who was unable to appear, and upon the opinions of financial experts, Judge Herlands, after a careful analysis of the facts and the surrounding circumstances of the 1930 transaction, exonerated the defendants in these words:

"The arrangement of October 24, 1930 was considered and approved by the board of directors of Blue Ridge

in the honest exercise of informed reasonable business judgment in the light of the circumstances.

"None of the individual defendants derived any unfair benefit or personal advantages from the said arrangement or its performance; and said arrangement and its performance were fair to Blue Ridge." 272 F.Supp. 636, 646 (1967).

Plaintiff also claims that the defendants between November 1930 and October 1931, improperly approved the release of collateral of a market value of $680,000. Nast had agreed that, if the Chase loan was not paid at maturity and Blue Ridge purchased the 160,000 shares of Conde Nast Publications stock, Blue Ridge was entitled to look to this collateral to make up any deficiency below $30 per share on any sale by Blue Ridge of the 160,000 shares, and that the collateral would not be sold or pledged without first consulting and receiving prior approval of Blue Ridge; Blue Ridge agreed that its approval would not be unreasonably withheld. The release of the collateral was in order to permit Nast to pledge those securities with other creditors and was a further measure to prevent foreclosure on Nast's assets. Conde Nast Publications had earned $1.37 per share in 1931 and it continued to be profitable in 1932. Judge Herlands found that there was no proof that release of the collateral injured Blue Ridge or that it was wrongful or wasteful, and that the release was of no significance in the case. We agree that the record supports the conclusion that the purpose of the release was to preserve and protect assets in which Blue Ridge had a contingent security interest, and that, as Catchings testified, the releases were justified and in the best interest of Blue Ridge.

It is undisputed that 1931 saw a further depression of economic conditions and the investment markets which reached panic proportion by the end of that year. When Nast was unable to pay off the $4,000,000 note, Blue Ridge, on January 2, 1932, entered into a further transaction with Nast whereby, after Blue Ridge purchased from Chase Bank the 160,000 Conde Nast Publications shares as had been previously agreed, Blue Ridge sold the shares to Nast for his demand note for $4,800,000, secured by the 160,000 shares and other collateral put up by Nast. The reason the directors gave for this action, which was credited by the trial judge, was that Blue Ridge's best chance for profit from its Conde Nast Publications investment was to retain Nast as head of Conde Nast Publications with a continuing personal stake in its success. Catchings testified that at that time the directors expected Nast would be able to pay the note; in view of Nast's record and the hopes for the future there is no reason to doubt that these were good faith expectations.

We need not here review Judge Herlands' detailed findings of fact regarding the January 2, 1932 transaction, see 272 F.Supp. at 648–650, which we find supported by the record. Suffice it to cite his conclusion:

"The transaction which Blue Ridge entered into on January 2, 1932, as described above, was approved by the board of directors in the exercise of honest, informed, reasonable business judgment under the circumstances and business and market conditions then prevailing and anticipated."

In January 1934, some months after control of Blue Ridge had passed to Atlas Corporation and all the defendants, except Catchings and Weinberg, had ceased to be directors, the Nast note was liquidated by selling it to Nast for 19,000 shares of Conde Nast Publications common stock and $1,000,000 in cash. Plaintiff makes no claim of liability with respect to this transaction.

Judge Herlands found that all of the transactions complained of were fully set forth and revealed in the Blue Ridge records, and that there was no evidence that any material information had been withheld or any fraud had

been practiced. The record fully supports this finding.

As we find Judge Herlands' decision on the merits to be fully dispositive of the issues in favor of the defendants, there is no need to examine the other grounds which the district court gave in further support of its judgment, namely, that appellant Marco failed to prove that failure to make demand upon the board of directors was excused, that William Marco was not a stockholder of Ridge Realization, an assignee of Blue Ridge, and that all claims except the Nast note transaction of 1931–32 were barred by the Statute of Limitations.

Judgment affirmed, with costs.